**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**CHRISTOPHER R. CATALANO,**

                                         **Plaintiff,**

**v.**                                                                              **04-CV-0452A(Sr)**

**STATE FARM INSURANCE**
 **CASUALTY COMPANY,**

                                         **Defendant.**

---

## REPORT, RECOMMENDATION AND ORDER

          This case was referred to the undersigned by the Hon. Richard J. Arcara,

pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon

dispositive motions.  Dkt. #3.


          Currently before the Court is defendant's motion for summary judgment

dismissing the complaint (Dkt. #8), and plaintiff's motion for summary judgment on the

issue of liability.  Dkt. #11.   For the following reasons, it is recommended that

defendant's motion be granted and plaintiff's motion be denied.


## BACKGROUND

          Plaintiff is the owner of a single family home located in the Town of

Angola, New York.   Dkt. #11-3, ¶ 1.  The residence was insured pursuant to a standard

homeowner's policy issued by State Farm Insurance Company ("State Farm"), on April

20, 2002.  Dkt. #8, ¶ 3; Dkt. #11-3, ¶ 2.  The policy provides insurance coverage for the

following:

**COVERAGE A - DWELLING**
We insure for accidental direct physical loss to the property
described in Coverage A, except as provided in **SECTION I
– LOSSES NOT INSURED.**

Dkt. #9-6, p.11.   Section I – Losses Not Insured, provides as follows:

1.   We do not insure for any loss to the property described in
Coverage A which consists of, or is directly and
immediately caused by, one or more of the perils listed in
items a. through n. below, regardless of whether the loss
occurs suddenly or gradually, involves isolated or
widespread damage, arises from natural or external
forces, or occurs as a result of any combination of these:

* * *

f.   continuous or repeated seepage or leakage of water
or steam from a:

* * *

(3)   plumbing system, including from within or around
any shower stall, shower bath, tub installation, or
other plumbing fixture, including their walls,
ceilings or floors;

which occurs over a period of time. . . .

* * *

i.   mold, fungus or wet or dry rot;

* * *

2.   We do not insure for any loss which would not have
occurred in the absence of one or more of the following
excluded events. . . .

d.   **Neglect**, meaning neglect of the **insured** to
use all reasonable means to save and
preserve property at and after the time of a
loss, or when the property is endangered.

* * *

3. We do not insure under any coverage for any loss consisting of one or more of the items below. . . .

\* \* \*

b.  defect, weakness, inadequacy, fault or unsoundness in:

(2)  design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

\* \* \*

Dkt. #9-6, pp.13-15.   The policy also provides:

### COVERAGE C – LOSS OF USE

1. **Additional Living Expense**.  When a Loss Insured causes the **residence premises** to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. . . .

Dkt. #9-6, p.7.

On May 8, 2002, plaintiff vacated his residence due to extensive mold contamination.  Dkt. #11-3, ¶ 11.  On May 9, 2002, while the policy was in full force and effect, plaintiff notified State Farm of a claim caused by "toxic and hazardous molds and bacteria."  Dkt. # 8, ¶¶ 4-5 & Dkt. #11-3, ¶ 5.  By letter dated May 14, 2002, State Farm advised plaintiff that it was questionable, *inter alia*, whether "[t]his loss falls under the coverages of the policy" and whether "[t]his loss consists wholly or partially of mold." Dkt. #8-3, p.6.   State Farm reserved its right to deny liability pending investigation of

-3-

the claim and notified plaintiff that:

> In the absence of notice to the INSURER to the contrary, the
> INSURED agrees that no action taken in cooperating with
> the INSURER's investigation will estop the INSURER from
> exercising any rights or defenses granted by the policy
> under which the claim is made.

Dkt. #8-3, pp.6-7.

State Farm retained Environmental Laboratory Services ("ELS"), to test

the residence.  Dkt. #8, ¶ 7.  ELS opined that

> the mold condition in the structure is due to long term
> moisture problems rather than a catastrophic plumbing
> failure.  The physical appearance of wood structures and the
> growth pattern of the mold demonstrate this.  It is not
> possible to determine when the mold growth started.
> Evidence of wood decay is slight giving the impression that
> the condition does not span a long time period.

Dkt. #8-3, pp.9-10.

Plaintiff retained a mold inspector, Craig Libglid, to inspect the premises.

Dkt. #11-3, ¶ 9.  In a report dated June 26, 2002, Mr. Libglid reported the following

observations:

1)  There is evidence of moisture problems in the bathroom
    area due to poor ventilation, and what appears to be a
    leak between the tub surround area where it meets the
    tub behind the wall.

2)  There is visible mold in the crawl space in [sic] under the
    dwelling due to poor ventilation.

3)  There is visible mold in the crawl space in the attic area.

4)  The grading . . . around the structure needs to be
    regraded.

-4-

5)  There is evidence of a moisture problem where the siding
meets the deck inside the bedroom wall.

Dkt. #8-3, p.23.

State Farm retained Building Science Investigations, Inc. ("BSI"), to further

investigate the mold contamination at the premises.  Dkt. #8, ¶ 11.  In a report dated

March 30, 2003, BSI concluded that:

The sources of moisture that prompted the growth of
organisms in the crawlspace is a combination of moisture
migration through the concrete block foundation, moisture
migration through the soil floor, moisture migration at the sill
plate, historical plumbing leaks and a seasonally high
relative humidity level from standing water.  The degree of
water damage, moisture content readings, pattern of water
staining, pattern of microbial growth . . . and the types of
organisms observed on the building materials are consistent
with long-standing moisture migration in the crawlspace.

The building science audit of the attic illustrated mold growth
over the majority of the sheathing . . . with the exception of a
replaced section of plywood sheathing.  The sources of
moisture that promoted the growth of organisms are a
combination of historical roof leaks (suggested by the
repaired section of roof) and a high relative humidity level
due to a lack of ventilation.  The degree of water damage,
the uniform areas of mocrobial growth, the types of
organisms observed on the sheathing, the plugged vents
and the oxidation of the nail points are indicative of a long-
standing ventilation problem.

In both cases, the sources of moisture that contributed to the
growth of organisms in the residence occurred over a
relatively long period of time.  It also appears that the owner
was aware of these conditions based on the repairs to the
residence.  In the crawlspace, the owner had repaired
plumbing lines, replaced the furnace, made modifications to
the dryer exhaust and removed the open celled white foam
sheeting from the bottom of the joists.  In the attic, a layer of
fiberglass batt insulation was added to the floor, damaged
sheathing was replaced and polystyrene baffles were placed

> in the attic (but not installed).  The owner had knowledge of
> these conditions and discussed the repairs openly during the
> investigation.

Dkt. #8-3, p.41.

By letter dated April 25, 2003, State Farm disclaimed coverage for the

damages claimed by plaintiff on the ground that:

> There is no coverage for mold damage to your dwelling
> because the damages were not caused by accidental direct
> physical loss.  In addition, damage caused by mold is
> specifically excluded by your policy. There are also several
> other policy exclusions that apply . . .

Dkt. #11-6, p.1.  State Farm also disclaimed coverage for additional living expenses

incurred by plaintiff "because a Loss Insured did not cause the damages to your

dwelling and personal property."  Dkt. #11-6, p.3.

## DISCUSSION AND ANALYSIS

### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed.R.Civ.P. 56(c).  "In reaching this determination, the

court must assess whether there are any material factual issues to be tried while

resolving ambiguities and drawing reasonable inferences against the moving party, and

must give extra latitude to a pro se plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 799

(W.D.N.Y. 1997) (internal citations omitted).

-6-

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise."  *Bryant*, 923 F.2d at 982.  A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

## Coverage for the Loss

State Farm argues that the insurance policy does not cover loss caused by a failure to adequately maintain the premises to address long-standing moisture problems.  Dkt. #8-2, p.4.

"It is well established under New York law that a policyholder bears the burden of showing that the insurance contract covers the loss." *Morgan Stanley Group, Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000); *see Consolidated Edison of N. Y., Inc. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 218 (2002) ("Generally, it is for the insured to establish coverage and for the insurer to prove that an exclusion in the policy applies to defeat coverage."). In other words, "[a]n insured seeking to recover for a loss under an insurance policy has the burden of proving that . . . the loss was a covered event within the terms of the policy." *Topor v. Erie Ins. Co.*, 28 A.D.3d 1199 (4th Dep't 2006).

In the instant case, the policy provides insurance coverage "for accidental direct physical loss" to plaintiff's residence. Dkt. #9-6, p.11. To fall within this definition, the insured must demonstrate that the loss was fortuitous, or beyond its control. *See Consolidated Edison,* 98 N.Y.2d at 220 ("Insurance policies generally require 'fortuity' and thus implicitly exclude coverage for intended or expected harms"), *citing* New York Insurance Law § 1101(a)(1) (defining insurance contact as any agreement whereby one party, the insurer, is obligated to confer benefit of pecuniary value upon another party, the insured, depending upon the happening of a fortuitous event). "Thus, the requirement of a fortuitous loss is a necessary element of insurance policies based on either an 'accident' or 'occurrence.'" *Id.* "New York courts have construed the term 'fortuitous event' to mean an event 'happening by chance or accident.'" *40 Gardenville v. Travelers Prop. Cas. of America*, 387 F. Supp.2d 205, 211 (W.D.N.Y. 2005).

The evidence before the Court is uncontroverted that the mold contamination was not caused by a fortuitous event, but was the result of "long term moisture problems;" "long-standing moisture migration;" and a "long-standing ventilation

problem" caused by inadequate maintenance.  Dkt. #8-3, pp. 9-10 & Dkt. #8, p.41.

Accordingly, the loss does not fall within the policy's coverage "for accidental direct

physical loss."  Dkt. #9-6, p.11.  *See Siegel v. Chubb Corp.,* 33 A.D.3d 565 (1st Dep't

2006) (granting summary judgment to insurer where there was "no evidence that the

mold was caused by any leak, which plaintiffs argue would be a covered occurrence.");

*Hritz v. Saco*, 18 A.D.3d 377, 379 (1st Dep't 2005) (granting summary judgment to

insurer since the claim was "outside the policy coverage" where there was no "showing

that the loss was fortuitous").


Plaintiff argues that the mold exclusion contained in the policy was not

approved by the New York State Department of Insurance and is, therefore,

unenforceable.  Dkt. #11-4, p.1.  In support of this argument, plaintiff cites materials

from the Office of General Counsel representing the position of the State of New York

Insurance Department regarding mold exclusions and the transcript of testimony by

Gregory V. Serio, Superintendent of the New York State Insurance Department before

the Joint Senate Committees on Health and Environmental Conservation Regarding the

Issue of Toxic Mold.  Dkt. #11-4, p.2.  While these documents indicate that the

Superintendent has not approved any limitations or exclusions for mold-related

coverage, they also state that:

> Coverage for property damage resulting from mold is
> generally excluded under property insurance coverage
> unless it is a consequence of a covered loss, such as a
> burst water pipe, or wind-driven rain.  Only where there is a
> causal link between the mold and the covered peril would a
> policy provide coverage.

Dkt. #11-12, p.1; see Dkt. #11-13, p.3.  In his testimony before the Senate Committees,

the Superintendent further explained that

> Coverage for property damage done by mold is generally excluded under a property policy unless it is a consequence of a covered loss such as a burst water pipe or wind-driven rain.  For example, the 1991 Insurance Services Office, Inc. (ISO) homeowners policy excludes coverage where mold occurs naturally due to moisture and relative humidity.  ISO is a rate service organization that generally serves as the property and casualty industry standard for policy terminology and practices.  Mold damage typically is not covered under the [property] policy because it is viewed as a home maintenance problem as opposed to a peril of a fortuitous nature.  Only when there is some causal link between the mold and the covered peril would the policy provide coverage.

Dkt. #11-13, p.3.  Thus, these documents demonstrate a distinction between the existence of coverage for mold damage caused by maintenance problems and the exclusion of coverage for mold damage resulting from an otherwise covered loss, *to wit*, a burst water pipe or wind-driven rain.

Plaintiff also argues that State Farm's delay in denying plaintiff's claim was unreasonable and void pursuant to New York Insurance Law § 3420(d).  Dkt. #11-4, p.3.  As a result, plaintiff argues that State Farm has waived any right it may have had to deny coverage.  Dkt. #11-4, p.3.  As an initial matter, the Court notes that Insurance Law § 3420(d) applies only to claims for "death or bodily injury."  *See Worcester Ins. Co. v. Bettenhauser*, 95 N.Y.2d 185, 188 (2000).  Moreover,

> Disclaimer pursuant to section 3420(d) is unnecessary when a claim falls outside the scope of the policy's coverage portion.  Under those circumstances, the insurance policy does not contemplate coverage in the first instance, and requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed.

*Id.*  In any event, State Farm's letter of May 14, 2002, issued within a week of plaintiff's

notice of claim, expressly reserved its right to deny coverage pending investigation of plaintiff's claim.  Dkt. #8-3, pp.6-7.

## CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that defendant's motion for summary judgment dismissing the complaint (Dkt. #8), be **GRANTED** and that plaintiff's motion for summary judgment on the issue of liability (Dkt. #11), be **DENIED**.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

-11-

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Order and a copy of the Report and Recommendation to counsel for the parties.

**SO ORDERED.**

DATED:        Buffalo, New York
              January 8, 2007

                              **S/ H. Kenneth Schroeder, Jr.**
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**